UNITED STATES of AMERICA
EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

CHRISTOPHER BROWN,

      Plaintiff,                               DEMAND FOR JURY TRIAL


 -vs-                                      Case No.
                                            Hon.

CAPPO MANAGEMENT II, INC.,
      *doing business as, "Victory Honda."*

      Defendant.

## **COMPLAINT AND JURY DEMAND**

## **JURISDICTION**

1.     This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337.

2.     As to any supplemental claims set forth herein, there are no exceptional circumstances or other compelling reasons for this Court to decline jurisdiction and the interests of justice would best be served if this Court heard these claims along with the federal claims.

## **PARTIES**

3.     The Plaintiff to this lawsuit is Christopher Brown who resides in Sterling Heights, Michigan in Macomb County.

4.     The Defendants to this lawsuit is Cappo Management II, Inc. ("Cappo Management II, Inc.") which is a corporation doing business in Michigan and which by statute and condition of licensing, may be served through its irrevocable resident agent, the Bureau of Regulatory Services, Business Licensing and Regulation Division, Richard H. Austin Building – 3rd Floor, 430 W. Allegan Street, Lansing, MI 48918.

5.    At all relevant times Cappo Management II, Inc. -- in the ordinary course of its business --
      regularly extended or offered consumer credit for which a finance charge is, or may be
      imposed or which, by written agreement is payable in more than four installments and is the
      person to whom the transaction which is the subject of this action is initially payable.

6.    Cappo Management II, Inc. is a creditor under TILA, 15 U.S.C. § 1602(g) and regulation Z
      § 226.2(a)(17).

## **VENUE**

7.    The transactions and occurrences which give rise to this action occurred in Monroe County.

8.    Venue is proper in the Eastern District of Michigan.

## **GENERAL ALLEGATIONS**

9.    Prior to August 25, 2017, Plaintiff was desperate for a vehicle that he and his wife could
      drive in order to get to and from work and in order to get their children back and forth from
      school.

10.   The vehicle Plaintiff and his wife had been driving needed repairs and before spending their
      meager savings on those repairs, the Plaintiff wanted to find out whether it would make more
      sense to purchase a vehicle on credit.

11.   Plaintiff faced an obstacle, however, in purchasing a vehicle; specifically, due to the fact that
      his driver's license was suspended, several dealers had already informed him that they could
      not sell him a vehicle on credit.

12.   One of the auto dealers that responded to Plaintiff's inquiry was Cappo Management II, Inc.

13.   Plaintiff explained to Cappo Management II, Inc.'s agents that he did not have a valid driver's license; unlike the other dealerships which told Plaintiff that they could not sell him a vehicle on credit, Cappo Management II, Inc. told the Plaintiff that it would sell him a vehcile on credit and that it would, "work around" the fact that he did not have a valid driver's license.

14.   On or about August 25, 2017, Plaintiff went to Cappo Management II, Inc.'s place of business to purchase a vehicle on credit, having been told by Cappo Management II, Inc. that

a.      it would sell him a vehicle on credit,

b.      he needed a $4,000.00 down payment,

c.      it would sell 6 months of car insurance for $1,000.00, and

d.      he did not need a valid driver's license to purchase a vehicle in Michigan.

15.   On or about August 25, 2017, Plaintiff spent a considerable amount of time at Cappo Management II, Inc. and signed all of the documents necessary to purchase a vehicle on credit.

16.   On or about August 25, 2017, at approximately 10 minutes before Cappo Management II, Inc. was scheduled to close for the evening, Cappo Management II, Inc. informed Plaintiff that it was unwilling to sell him a vehicle on credit.

17.   On or about August 25, 2017, Plaintiff left Cappo Management II, Inc.'s place of business with no vehicle and no paperwork.

18.   On or about August 26, 2017, in the morning, Plaintiff received a telephone call from Cappo Management II, Inc. telling Plaintiff that:

a.      it would sell him a vehicle on credit,

3

     b.      he needed a $4,000.00 down payment,

     c.      it would sell 6 months of car insurance for $1,000.00, and

     d.      he did not need a valid driver's license to purchase a vehicle in Michigan.

19.     On or about August 26, 2017, Plaintiff executed a purchase and finance agreement known as a retail installment contract with Cappo Management II, Inc. for a 2015 Chevrolet Trax, VIN KL7CJLSB9FB252611 ("the vehicle").

20.     Prior to consummating the credit sale of the vehicle, Plaintiff was not given a copy of Truth in Lending disclosure in a form which he could have and keep.

21.     Cappo Management II, Inc. failed to apply for title in the Plaintiff's name in spite of a legal and contractual duty to do so.

22.     Cappo Management II, Inc. charged the Plaintiff $2,000.00 for a service contract but failed to forward any money to the service contract company; as such this charge constitutes an undisclosed finance charge.

23.     Cappo Management II, Inc. charged the Plaintiff $795.00 for a GAP insurance but failed to forward any money to the GAP insurance company; as such this charge constitutes an undisclosed finance charge.

24.     Cappo Management II, Inc. charged the Plaintiff $878.04 for sales tax but failed to forward any money to the State of Michigan; as such this charge constitutes an undisclosed finance charge.

25.     Cappo Management II, Inc. charged the Plaintiff $23.00 for title and registration fees but failed to forward any money to the State of Michigan; as such these charges constitute undisclosed finance charges.

26.     Cappo Management II, Inc. charged the Plaintiff $1,000.00 for hazard insurance but failed to forward any money to the insurance company; as such thsi charge constitutes an undisclosed finance charge.

27.     Before executing the retail installment contract, Cappo Management II, Inc. made the following material representations ("material representations") which also constituted express warranties, were false, and related to the vehicle:

    a.      it would sell him a vehicle on credit,

    b.      he needed a $4,000.00 down payment,

    c.      it would sell 6 months of car insurance for $1,000.00, and

    d.      he did not need a valid driver's license to purchase a vehicle in Michigan.

28.     Cappo Management II, Inc. made the following representations by operation of law as a result of the sale of a written warranty or extended service contract within 90 days of the sale of the vehicle:

    a.      it would sell him a vehicle on credit,

    b.      he needed a $4,000.00 down payment,

    c.      it would sell 6 months of car insurance for $1,000.00, and

    d.      he did not need a valid driver's license to purchase a vehicle in Michigan.

29.     The vehicle constitutes a "good" under article 2 of the UCC, M.C.L. §440.2101 *et seq.*

30.     Cappo Management II, Inc. has demanded that Plaintiff return the vehicle even though the Plaintiff is not in default of the contract.

31.     The foregoing describes a classic "yo-yo" scam and violated state and federal laws.

5

## COUNT I -- Truth In Lending Act (Cappo Management II, Inc.)

32.  Mr. Brown incorporates the preceding allegations by reference.

33.  By failing to provide Mr. Brown with a copy of truth in lending disclosures at the time and in the manner prescribed by Regulation Z of the Truth in Lending Act, the dealer has violated the federal Truth in Lending Act, 15 U.S.C. § 1601.

34.  Cappo Management II, Inc. failed to accurately disclose the cash price of the vehicle.

35.  The failure to properly disclose the cash price of the vehicle consequently caused a failure to accurately disclose the amount financed in violation of 15 U.S.C. § 1638; 16 CFR § 226.18 (b) and (c).

36.  Cappo Management II, Inc. failed to accurately disclose the applicable finance charge as required by 15 U.S.C. § 1638 and Reg Z § 226.18(d)

37.  Cappo Management II, Inc. failed to accurately disclose and itemize the amount financed in violation of 15 U.S.C. § 1638, Reg Z § 226.18(b), and Reg Z § 226.18(c).

38.  As a consequence of failing to accurately state the actual finance charge, Cappo Management II, Inc. also misstated the applicable "APR" in violation of 15 U.S.C. § 1338 and Reg Z § 226.18(e).

39.  Cappo Management II, Inc. failed to accurately disclose the applicable "APR" as required by 15 U.S.C. § 1638; Reg Z § 226.18(32); Reg Z § 226.22.

40.  Consequently, Cappo Management II, Inc. falsely and inaccurately disclosed the applicable APR contrary to 15 U.S.C. § 1638(a)(4); Reg Z § 226.18(32); Reg Z § 226.22..

41.   By falsely and inaccurately misstating the APR, finance charge, and amount financed due to the inflation of the purchase price of the vehicle, Cappo Management II, Inc. violated 15 U.S.C § 1638(a)(3), entitling Mr. Brown's to recover statutory damages under 15 U.S.C. § 1640, amounting to twice the finance charge and actual damages.

42.   Cappo Management II, Inc. was required to make the disclosures required by 16 U.S.C. § 1638 prior to failed to prior to consummating the sale of the vehicle.

43.   Those disclosures were required to be made in writing, in form that could be kept by the consumer so that consumers may shop for credit prior to engaging in a credit transaction.

44.   Cappo Management II, Inc. failed to make those disclosures in a timely fashion in violation of 15 U.S.C. § 1638(a)(4).

45.   Cappo Management II, Inc. is liable to plaintiff for actual and statutory damages to be determined at trial, costs, and statutory attorney fees in accordance with 15 U.S.C. § 1640.

## COUNT I -- Equal Credit Opportunity Act (Cappo Management II, Inc.)

46.   Mr. Brown incorporates the preceding allegations by reference.

47.   Cappo Management II, Inc. is a creditor for purpose of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq*.

48.   Following the receipt of the complete application for credit, Cappo Management II, Inc. was required to make a credit decision within 30 days.

49.   Cappo Management II, Inc. took adverse action for purposes of the ECOA.

50.   Cappo Management II, Inc. was otherwise required to provide an adverse action notice.

51.   Cappo Management II, Inc. failed to issue the adverse action notice as required by the ECOA.

52.    Cappo Management II, Inc. has inadequate policies or procedures in place to comply with the ECOA's adverse action notice requirements.

53.    This failure to issue an adverse action notice constituted a wilful violation of the ECOA, 15 U.S.C. § 1691 by Cappo Management II, Inc.

54.    Cappo Management II, Inc. has failed to maintain proper records of its credit actions in violation of the ECOA.

55.    This failure to properly maintain records constituted a wilful violation of the ECOA, 15 U.S.C. § 1691 *et seq*. by Cappo Management II, Inc.

56.    Plaintiff has suffered damages by this violation of ECOA.

### COUNT  III   -- Fair Credit Reporting Act (Cappo Management II, Inc.)

57.    Mr. Brown incorporates the preceding allegations by reference.

58.    Following application for credit by Plaintiff, Cappo Management II, Inc. accessed and used Plaintiff's consumer credit report for the purpose of determining his eligibility for credit.

59.    Based upon a review of that consumer credit report, Cappo Management II, Inc. required that Eric obtain a cosigner for the loan.

60.    That requirement constituted adverse action for purposes of the FCRA.

61.    Cappo Management II, Inc. failed to issue the adverse action notice to Plaintiff which the FCRA requires of users of consumer credit reports who take adverse action.

62.    Upon information and belief, Cappo Management II, Inc. has no policies or procedures in place to comply with the FCRA's adverse action notice.

63.    This failure to issue an adverse action notice constituted a negligent violation of the FCRA, 15 U.S.C. § 1681o.

8

64.     This failure to issue an adverse action notice constituted a willful violation of the FCRA, 15

U.S.C. § 1681n.

### COUNT  IV  -- Federal Credit Repair Organization Act (Cappo Management II, Inc.)

65.     Mr. Brown incorporates the preceding allegations by reference.

66.     At all relevant times Cappo Management II, Inc. -- in the ordinary course of its business --

operated as a "user" of consumer credit reports as that term is used in 15 U.S.C. § 1681m.

67.     Cappo Management II, Inc. has used instrumentalities of interstate commerce to provide or

perform credit repair services.

68.     Cappo Management II, Inc. has used these instrumentalities of interstate commerce to offer

to improve Mr.  Brown's  credit record, credit history, or credit rating.

69.     Cappo Management II, Inc. is a credit repair organization within the meaning of 15 U.S.C.

§ 1679a(3).

70.     Cappo Management II, Inc. has violated  15 § U.S.C. 1679a(3).

### COUNT  V  -- Statutory Conversion (Cappo Management II, Inc.)

71.     Mr. Brown incorporates the preceding allegations by reference.

72.      After obtaining Mr.  Brown  signature on all documents necessary to convey title and

complete the financing of the vehicle, Cappo Management II, Inc. Took $5,000.00 of the

Plaintiff's money.

73.     Cappo Management II, Inc. Refused to convey title to the vehicle to Plaintiff and pocketed

the money instead.

74.     Cappo Management II, Inc. had no right to steal Plaintiff's $5,000.00.

75.     Cappo Management II, Inc.'s actions in stealing Plaintiff's money was wilful or intentional.

9

76.     These acts constitute a willful or intentional conversion under MCL § 600.2919a entitling

Mr. Brown  to recover treble the value converted.

**COUNT  VI  -- Common Law Conversion (Cappo Management II, Inc.)**

77.     Mr. Brown incorporates the preceding allegations by reference.

78.     These actions constitute a conversion at common law, entitling Mr. Brown  to recover the

value of the vehicle converted.

**COUNT  VII  -- Violation of Michigan Consumer Protection Act**

**(Cappo Management II, Inc.)**

79.     Mr. Brown incorporates the preceding allegations by reference.

80.     Cappo Management II, Inc. is engaged in trade or commerce as that term is defined in M.C.L.

§ 445.902.

81.     Cappo Management II, Inc. has engaged in one or more of deceptive or unfair practices

prohibited by the Michigan Consumer Protection Act, M.C.L.§ 445.903, including but not

limited to the following:

a.      Causing a probability of confusion or misunderstanding as to the source, sponsorship,

approval, or certification of goods or services.

b.      Using deceptive representations or deceptive designations of geographic origin in

connection with goods or services.

c.      Representing that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits, or quantities that they do not have or that a person has

sponsorship, approval, status, affiliation, or connection that he or she does not have.

10

d.      Representing that goods are new if they are deteriorated, altered, reconditioned, used, or secondhand.

e.      Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

f.      Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of  price reductions.

g.      Representing that a part, replacement, or repair service is needed when it is not.

h.      Representing to a party to whom goods or services are supplied that the goods or services are being supplied in response to a request made by or on behalf of the party, when they are not.

i.      Causing a probability of confusion or of misunderstanding with respect to the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction.

j.      Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

k.      Causing a probability of confusion or of misunderstanding as to the terms or conditions of credit if credit is extended in a transaction.

l.      Disclaiming or limiting the implied warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed.

11

m.      Representing that a consumer will receive goods or services "free", "without charge", or words of similar import without clearly and conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms, or prerequisites to the use or retention of the goods or services advertised.

n.      Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

o.      Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.

p.      Failing, in a consumer transaction that is rescinded, canceled, or otherwise terminated in accordance with the terms of an agreement, advertisement, representation, or provision of law, to promptly restore to the person or persons entitled to it a deposit, down payment, or other payment, or in the case of property traded in but not available, the greater of the agreed value or the fair market value of the property, or to cancel within a specified time or an otherwise reasonable time an acquired security interest.

q.      Taking or arranging for the consumer to sign an acknowledgment, certificate, or other writing affirming acceptance, delivery, compliance with a requirement of law, or other performance, if the merchant knows or has reason to know that the statement is not true.

12

r.    Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

s.    Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold.

t.    Causing coercion and duress as the result of the time and nature of a sales presentation.

u.    Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

82.   Mr. Brown has suffered damages as a result of these violations of the Michigan Consumer Protection Act.

83.   Mr. Brown suffers continuing damages as a result of these violations of the Michigan Consumer Protection Act.

### COUNT VIII  -- Misrepresentation (Cappo Management II, Inc.)

84.   Mr. Brown incorporates the preceding allegations by reference.

85.   The material representations were intended to induce the reliance of Mr. Brown.

86.   The material representations did induce the reasonable reliance of Mr. Brown.

87.   Cappo Management II, Inc. made the material representations with actual knowledge of their falsity.

88.   These actions constitute a misrepresentation upon Mr. Brown by Cappo Management II, Inc.

89.   Mr. Brown has suffered damages as a result of this misrepresentation.

13

90.   As a result of this misrepresentation, Mr. Brown suffers continuing damages.

### COUNT IX  -- Breach of Contract (Cappo Management II, Inc.)

91.   Mr. Brown incorporates the preceding allegations by reference.

92.   Cappo Management II, Inc.'s tender of the performance did not conform as a result of the vehicle's mechanical defects, lack of merchantability, or fitness for intended purpose which existed at the time of delivery.

93.   The failure of Cappo Management II, Inc. to deliver conforming goods, title, and follow up services at the contract price constitutes a material breach of contract.

94.   Mr. Brown has suffered damages as a result of this breach of contract.

95.   Mr. Brown suffers continuing damages as a result of this breach of contract.

### COUNT X  — Motor Vehicle Sales Finance Act (Cappo Management II, Inc.)

96.   Mr. Brown incorporates the preceding allegations by reference.

97.    Cappo Management II, Inc. failed to properly complete all necessary terms of the installment contract as required by M.C.L. §492.101 et seq.

98.   Mr. Brown have suffered the damages set forth above by reason of the Cappo Management II, Inc.'s violations of the MVSFA.

### COUNT XI  — Motor Vehicle Installment Sales Contract Act (Cappo Management II, Inc.)

99.   Mr. Brown incorporates the preceding allegations by reference.

100.    Cappo Management II, Inc. failed to properly complete all necessary terms of the installment contract as required by M.C.L. § 566.302 *et seq*.

101.   Mr. Brown suffered damages in the amount of the finance charge imposed, that amount being 13,742.04

14

**COUNT XII — Motor Vehicle Code Violations (Cappo Management II, Inc.)**

102.    Mr. Brown incorporates the preceding allegations by reference.

103.    Cappo Management II, Inc. violated the Motor Vehicle Code.

104.    Cappo Management II, Inc. failed to apply for title within 15 days of delivering the vehicle
        to Mr. Brown as required by M.C.L. §257.235.

105.    Cappo Management II, Inc.'s failure to effectively transfer title constituted a violation of
        M.C.L. §257.235.

106.    Mr. Brown may void the contract of sale as a result Cappo Management II, Inc.'s violation
        of the Motor Vehicle Code.

**JURY DEMAND**

107.    Christopher Brown demands a jury trial in this case.

**REQUEST FOR RELIEF**

Plaintiff requests that this Honorable Court grant the following relief:

*1.*    *Assume jurisdiction over this case including all supplemental claims.*

*2.*    *Award actual damages.*

*3.*    *Award treble damages.*

*4.*    *Award statutory and punitive damages.*

*5.*    *Award statutory costs and attorney fees.*

15

Respectfully Submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By:      /s/ Adam G. Taub
         Adam G. Taub (P48703)
         Attorney for Christopher Brown
         17200 West 10 Mile Rd. Suite 200
         Southfield, MI 48075
         Phone:  (248) 746-3790
         Email:   adamgtaub@clgplc.net

Dated: October 9, 2017